UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: _____

RAVAGO AMERICAS, LLC,
a Delaware limited liability company,

       Plaintiff,

vs.

ZURICH AMERICAN INSURANCE COMPANY,
a foreign corporation; AMERICAN GUARANTEE
AND LIABILITY INSURANCE COMPANY, a foreign
corporation; and AIG SPECIALTY INSURANCE
COMPANY, a foreign corporation,

       Defendants.
_____/

# COMPLAINT

Plaintiff Ravago Americas, LLC ("Ravago Americas") sues defendants Zurich American Insurance Company ("ZAIC") and American Guarantee and Liability Insurance Company ("AGLIC"), (collectively "Zurich"); and AIG Specialty Insurance Company ("AIG"), and states:

## Jurisdiction and Venue

1.    The Court has subject matter jurisdiction in this action based on diversity of citizenship of the parties pursuant to 28 U.S.C. §1332. Complete diversity of citizenship exists between plaintiff Ravago Americas LLC and defendants ZAIC, AGLIC, and AIG, as set forth below.

2.    This is an action for breach of contract and declaratory judgment in which the amount in controversy exceeds seventy five thousand dollars ($75,000.00), exclusive of interest, costs, and attorney's fees.

1

3. Venue is proper in this district because defendants are foreign insurance corporations authorized by the Florida Office of Insurance Regulation to do business in Florida, and the causes of action alleged herein arose in Orange County, Florida.

**The Parties**

4. Plaintiff Ravago Americas is a Delaware limited liability company with its principal place of business in Orlando, Orange County, Florida. Ravago Americas has one single member, Ravago Holdings America, Inc., which is a Delaware corporation with its principal place of business in Orlando, Florida.

5. Plaintiff Ravago Americas is a successor in interest to H. Muehlstein & Co., Inc. ("HM&C) by virtue of a corporate merger in the state of Delaware that was effective on December 31, 2013. Plaintiff Ravago Americas is also a successor in interest to Ravago Manufacturing Americas, LLC (RMA, LLC) by virtue of the corporate merger in Delaware that was effective on December 31, 2013.

6. Defendant American Guarantee And Liability Insurance Company is a New York corporation with its principal place of business in Schaumburg, Illinois, and is licensed by the Florida Department of Financial Services, Office of Insurance Regulation as an authorized insurer in the State of Florida.

7. Defendant Zurich American Insurance Company is a New York corporation with its principal place of business in Schaumburg, Illinois, and is licensed by the Florida Department of Financial Services, Office of Insurance Regulation as an authorized insurer in the State of Florida.

8.     Defendant AIG Specialty Insurance Company ("AIG Specialty"), f/k/a Chartis Specialty Insurance Company ("Chartis Specialty") (collectively, "AIG"), is an Illinois corporation with its principal place of business in New York, and is authorized by the Florida Department of Financial Services, Office of Insurance Regulation, to do business as a surplus lines insurer in the State of Florida.

### General Factual Allegations

**The Policies**

9.     AGLIC issued Policy No. CPO2867823-01, effective March 1, 2004 through March 1, 2005 to Muehlstein Holding Corporation, located at 800 Connecticut Avenue, Norwalk, CT 06854 ("the 2004-2005 policy") under which policy H. Muehlstein & Company, Inc. n/k/a Ravago Americas LLC is a Named Insured. The 2004-2005 policy provides commercial general liability insurance ("CGL") coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. Ravago is not in possession of a copy of the policy, which will be filed after it has been obtained from Zurich in discovery in this matter.

10.    AGLIC issued Policy No. CPO2867823-02, effective March 1, 2005 through March 1, 2006 to Muehlstein Holding Corporation, located at 800 Connecticut Avenue, Norwalk, CT 06854 ("the 2005-2006 policy") under which policy H. Muehlstein & Company, Inc. n/k/a Ravago Americas LLC is a Named Insured. The 2005-2006 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Common Policy Declarations and certain other forms in the policy is included as Exhibit A and incorporated by

reference. Ravago is not in possession of a complete copy of the policy, which will be filed after it has been obtained from Zurich in discovery in this matter.

11. ZAIC issued Policy No. CPO 2867823-03, effective March 1, 2006 through March 1, 2007 to Muehlstein Holding Corporation, located at 800 Connecticut Avenue, Norwalk, CT 06854 ("the 2006-2007 policy") under which policy H. Muehlstein & Company, Inc. n/k/a Ravago Americas LLC is a Named Insured. The 2006-2007 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Policy is included as Exhibit B and incorporated by reference.

12. ZAIC issued Policy No. CPO 2867823-06, effective June 15, 2007 through June 15, 2008 to Ravago Holdings America, Inc, located at 800 Connecticut Avenue, Norwalk, CT 06854 ("the 2007-2008 policy") under which policy H. Muehlstein & Company, Inc. n/k/a Ravago Americas LLC is a Named Insured. The 2007-2008 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Policy is included as Exhibit C and incorporated by reference.

13. ZAIC issued Policy No. CPO 2867823-07, effective June 15, 2008 through July 1, 2009 to Ravago Holdings America, Inc, located at 800 Connecticut Avenue, Norwalk, CT 06854 ("the 2008-2009 policy") under which policy H. Muehlstein & Co., Inc., and Ravago Manufacturing Americas LLC, both of which are n/k/a Ravago Americas LLC, are Named Insureds. The 2008-2009 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Policy is included as Exhibit D and incorporated by reference.

4

14.     ZAIC issued Policy No. GLA 2867823-08, effective July 1, 2009 through July 1, 2010 to Ravago Holdings America, Inc, located at 800 Connecticut Avenue, Norwalk, CT 06854 ("the 2010-2011 policy")  under which policy H. Muehlstein & Co., Inc., and Ravago Manufacturing Americas LLC, both of which are n/k/a Ravago Americas LLC, are Named Insureds. The 2009-2010 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period.  A copy of the Policy is included as Exhibit E and incorporated by reference.

15.     ZAIC issued Policy No. GLA 2867823-09, effective July 1, 2010 through July 1, 2011 to Ravago Holdings America, Inc, located at 800 Connecticut Avenue, Norwalk, CT 06854 ("the 2010-2011 policy) under which policy Ravago Manufacturing Americas LLC n/k/a Ravago Americas LLC is a named insured. The 2010-2011 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period.  A copy of the Policy is included as Exhibit F and incorporated by reference.

16.     ZAIC issued Policy No. GLA 2867823-10, effective July 1, 2011 through July 1, 2012 to Ravago Holdings America, Inc, located at 800 Connecticut Avenue, Norwalk, CT 06854 ("the 2011-2012 policy"), under which Ravago Manufacturing Americas LLC n/k/a Ravago Americas is a named insured. The 2011-2012 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Policy is included as Exhibit G and incorporated by reference.

17.     Chartis Specialty n/k/a AIG Specialty issued Policy No. EG 25718575, effective July 1, 2012 through July 1, 2013, to Ravago Holdings America, Inc, located at 1900 Summit

5

Tower Blvd., Orlando, Florida 32810 ("the 2012-2013 policy"), under which Ravago Americas is a named insured. The 2012-2013 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Policy is included as Exhibit H and incorporated by reference.

18.  Chartis Specialty n/k/a AIG Specialty issued Policy No. EG 25718575, effective July 1, 2013 through July 1, 2014, to Ravago Holdings America, Inc, located at 1900 Summit Tower Blvd., Orlando, Florida 32810 ("the 2013-2014 policy"), under which Ravago Americas is a named insured. The 2013-2014 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. Plaintiff is not in possession of a copy of the policy, which will be obtained through discovery and filed in due course.

19.  AIG Specialty issued Policy No. EG 25718575, effective July 1, 2014 through July 1, 2015, to Ravago Holdings America, Inc, located at 1900 Summit Tower Blvd., Orlando, Florida 32810 ("the 2014-2015 policy"), under which Ravago Americas is a named insured. The 2014-2015 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Policy is included as Exhibit I and incorporated by reference.

20.  AIG Specialty issued Policy No. EG 25718575, effective July 1, 2015 through July 1, 2016, to Ravago Holdings America, Inc, located at 1900 Summit Tower Blvd., Orlando, Florida 32810 ("the 2015-2016 policy"), under which Ravago Americas is a named insured. The 2015-2016 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Policy is included as Exhibit J and incorporated by reference.

21. AIG Specialty issued Policy No. EG 25718575, effective July 1, 2016 through July 1, 2017, to Ravago Holdings America, Inc, located at 1900 Summit Tower Blvd., Orlando, Florida 32810 ("the 2016-2017 policy"), under which Ravago Americas is a named insured. The 2016-2017 policy provides CGL coverage to Ravago Americas for, *inter alia*, bodily injury and property damage claims resulting from occurrences which occur during the policy period. A copy of the Policy is included as Exhibit K and incorporated by reference.

**Relevant Policy Provisions**

22. Each of the CGL policies issued by AGLIC and ZAIC referred to above was issued and delivered to the Named Insured at its headquarters in Norwalk, Connecticut, and pursuant to the doctrine of *lex loci contractus*, is governed by the laws of the State Of Connecticut with respect to its interpretation.

23. Each of the CGL policies issued by AIG Specialty (and its corporate predecessor, Chartis Specialty Insurance Company) referred to above was issued and delivered to the Named Insured at its headquarters in Orlando, Florida, and pursuant to the doctrine *of lex loci contractus*, is governed by the law of the State of Florida with respect to its interpretation.

24. Each of the CGL policies referred to in paragraphs 9 through 21 above contains the following insuring agreement provisions which are relevant to this action:

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      (2) The "bodily injury" or "property damage" occurs during the policy period; and
      (3) Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give or receive

>    notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part….
>
> c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

25. Each of the CGL policies referred to above contains the following definitions relevant to this action:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**The Underlying Lawsuit**

26. On October 13, 2017, Certainteed Corporation ("CertainTeed"), a building products manufacturer, filed a complaint against Ravago Americas LLC in the Court of Common Pleas of Philadelphia, First Judicial District of Pennsylvania under Civil Action No. 01741, Case ID #171001741 ("the underlying case"). A copy of that complaint is included as Exhibit L hereto.

27. On May 13, 2018, Certainteed Corporation filed and served an amended complaint against Ravago Americas LLC in the underlying case. A copy of that amended complaint is included as Exhibit M hereto.

28. On June 26, 2019, Certainteed Corporation filed and served a second amended complaint against Ravago Americas LLC in the underlying case. A copy of that second amended complaint is included as Exhibit N hereto.

29. The allegations against Ravago asserted in the original, amended, and second amended complaints, in sum, assert that, from May 10, 2004 through as late as July of 2016, Ravago (through its corporate predecessors, H. Muehlstein & Co., Inc. and Ravago Manufacturing Americas LLC) supplied a polypropylene compound to CertainTeed which CertainTeed then used in the manufacture of its Siding.

30. CertainTeed alleged in its original, first amended, and second amended complaints that the compound supplied by Ravago was defective, and as a result of its use in the manufacture of CertainTeed's siding, the compound caused the Siding to "unevenly and/or excessively fade when exposed to environmental conditions over a period of time."

31. In its second amended complaint, moreover, CertainTeed further alleged that Ravago's compound "caused physical damage to the Siding through microcracking or microcrazing, resulting in a faded appearance," and that "in some instances, removing the faded Siding also caused damage to other, non-faded portions of the Siding, to adjacent trim, or to the structure that the Siding was installed on."

32. CertainTeed further alleged in each of the complaints that, due to the excessive fading of the Siding caused by Ravago's compound, Certainteed has incurred, and will continue to incur, significant damages in the form of warranty claims it is required to pay to consumers.

**AIG's Response to the Underlying Claim and Lawsuit**

33. Upon being provided with a copy of CertainTeed's pre-suit demand letters to Ravago, John R. Kelly at AIG Claims, Inc. (AIG's claims administrator) advised Ravago that

AIG would retain mutually agreeable counsel to defend against this claim, subject to a full reservation of rights.

34. Ravago and AIG thereafter entered into an agreement whereby AIG agreed that Ravago Americas would be defended by AIG in the underlying case through mutually agreeable counsel selected by Ravago Americas, which defense law firm would bill Ravago at its standard hourly rates, Ravago would pay the firm's bills directly, and AIG would then reimburse Ravago Americas for the hourly work performed by the defense law firm's partners and associates at the rate of $370.00 per hour for partners, and $210.00 per hour for associates.  Under this agreement with AIG, Ravago would be responsible for paying the remainder of its defense fees and costs to the extent such fees and costs were not otherwise reimbursed by AIG.

**Zurich's Response to the Underlying Lawsuit**

35. Upon being notified by Ravago of the filing of the original complaint against Ravago Americas by CertainTeed in the underlying case, by letter to Ravago dated December 7, 2017, Stephen Wojcik at Zurich – on behalf of AGLIC and ZAIC – stated that the claim presented by CertainTeed in the complaint "does not indicate property damage caused by an occurrence based upon the definitions in the policies," and denied coverage, thus refusing to provide Ravago with a defense to the underlying case. A copy of that letter is attached as Exhibit O.

36. Upon being notified by Ravago of the filing of the amended complaint against Ravago by CertainTeed in the underlying case, by letter to Ravago dated November 29, 2018, Stephen Wojcik at Zurich – on behalf of AGLIC and ZAIC – stated that the claim presented by CertainTeed in the amended complaint "does not indicate property damage caused by an occurrence based upon the definitions in the policies," and denied coverage, thus refusing to

provide Ravago with a defense to the amended complaint. A copy of that letter is attached as Exhibit P.

37. Upon being notified by Ravago of the filing of the second amended complaint against Ravago by CertainTeed in the underlying case, by letter to Ravago dated July 29, 2019, Stephen Wojcik at Zurich – on behalf of AGLIC and ZAIC – agreed that Zurich would "participate" in the defense of Ravago in the underlying case under a reservation of rights. A copy of that letter is attached as Exhibit Q.

38. Zurich, through counsel, has informed Ravago that Zurich's "participation" in the defense of Ravago is in the form of an agreement expressed in an email exchange between Zurich and AIG, under which the insurers' combined contribution toward Ravago's defense fees and costs will amount to no more than the limited reimbursement amounts which AIG alone had originally undertaken to pay toward Ravago's defense fees and costs, leaving Ravago to continue to pay the difference, despite the fact that AGLIC, ZAIC, and AIG each has a duty to defend Ravago in the underlying case.

39. Ravago, through counsel, requested that Zurich pay the difference between the amount AIG had previously agreed to pay toward Ravago's defense fees and costs in the underlying case, and the total cost billed by the defense law firm to Ravago for that defense, in order that Ravago Americas would not have to fund a significant portion of its own defense in the underlying case, despite AGLIC, ZAIC, and AIG each having the duty to defend Ravago in that case, but Zurich has refused to do so.

40. As a result of Zurich's limited undertaking to "participate" in Ravago's defense in the underlying case, AIG is no longer contributing the full amount it had previously agreed to

contribute toward Ravago's defense in the underlying case, in violation of the terms of its prior agreement with Ravago.

### Count I – Breach of Contract by ZAIC and AGLIC:
### Refusal to Defend Ravago Against CertainTeed's Original Complaint

41. Plaintiff adopts the allegations of paragraphs 9-16, 22, and 24-40 above.

42. Pursuant to Connecticut law which governs the policies issued to Ravago's corporate predecessors by ZAIC and AGLIC, a liability insurer has a duty to defend its insured if the allegations of the complaint against the insured allege a claim that is potentially within the coverage provided by the insured's policy, or if the insurer is aware of facts concerning the claim against the insured that would implicate the insurer's duty to defend its insured.

43. The allegations of the original complaint by CertainTeed against Ravago Americas in the underlying case alleged a claim for property damage resulting from an occurrence, which claim was potentially within the coverage provided by AGLIC and ZAIC to Ravago's corporate predecessors under the above referenced policies, thus the complaint triggered both AGLIC's and ZAIC's duty to defend Ravago Americas in the underlying case.

44. In addition, based on pre-suit demand letters from CertainTeed to Ravago which had been provided to Zurich, both AGLIC and ZAIC were aware of the facts of CertainTeed's claims against Ravago, which facts implicated AGLIC's and ZAIC's duty to defend Ravago once the original complaint against Ravago was filed.

45. AGLIC and ZAIC refused to defend Ravago Americas against the original complaint in the underlying case, in breach of their respective duties to defend Ravago Americas under the above referenced policies.

46. As a result of AGLIC's and ZAIC's breach of their duty to defend Ravago America in the underlying case in response to the original complaint, Ravago Americas was damaged.

Wherefore, Ravago Americas demands judgment against AGLIC and ZAIC for compensatory damages, interest, costs, and such other and further relief as the Court deems appropriate.

### Count II – Breach of Contract by ZAIC and AGLIC: Refusal to Defend Ravago Against CertainTeed's Amended Complaint

47. Plaintiff adopts paragraphs 9-16, 22, and 24-40 above.

48. Pursuant to Connecticut law which governs the policies issued to Ravago's corporate predecessors by ZAIC and AGLIC, a liability insurer has a duty to defend its insured if the allegations of the complaint against the insured allege a claim that is potentially within the coverage provided by the insured's policy, or if the insurer is aware of facts concerning the claim against the insured that would implicate the insurer's duty to defend its insured.

49. The allegations of the amended complaint by CertainTeed against Ravago Americas in the underlying case alleged a claim for property damage resulting from an occurrence, which claim was potentially within the coverage provided by AGLIC and ZAIC to Ravago's corporate predecessors under the above referenced policies, thus the amended complaint triggered both AGLIC's and ZAIC's respective duty to defend Ravago Americas in the underlying case.

50. In addition, based on pre-suit demand letters from CertainTeed to Ravago which had been provided to Zurich, both AGLIC and ZAIC were aware of the facts of CertainTeed's claims against Ravago, which facts implicated AGLIC's and ZAIC's duty to defend Ravago once the amended complaint against Ravago was filed.

51. AGLIC and ZAIC refused to defend Ravago Americas against the amended complaint in the underlying case, in breach of their respective duty to defend Ravago under the above referenced policies.

52. As a result of AGLIC's and ZAIC's breach of their respective duty to defend Ravago Americas in the underlying case in response to the amended complaint, Ravago Americas was damaged.

Wherefore, Ravago Americas demands judgment against AGLIC and ZAIC for compensatory damages, interest, costs, and such other and further relief as the Court deems appropriate.

### Count III – Breach of Contract by ZAIC and AGLIC:
### Refusal to Defend Ravago Against CertainTeed's Second Amended Complaint

53. Plaintiff adopts paragraphs 9-16, 22, and 24-40 above.

54. Pursuant to Connecticut law which governs the policies issued to Ravago's corporate predecessors by ZAIC and AGLIC, a liability insurer has a duty to defend its insured if the allegations of the complaint against the insured allege a claim that is potentially within the coverage provided by the insured's policy, or if the insurer is aware of facts concerning the claim against the insured that would implicate the insurer's duty to defend its insured.

55. The allegations of the second amended complaint by CertainTeed against Ravago Americas in the underlying case alleged a claim for property damage resulting from an occurrence, which claim was potentially within the coverage provided by AGLIC and ZAIC to Ravago's corporate predecessors under the above referenced policies, thus the second amended complaint triggered both AGLIC's and ZAIC's duty to defend Ravago Americas in the underlying case.

56. In addition, based on pre-suit demand letters from CertainTeed to Ravago which had been provided to Zurich, both AGLIC and ZAIC were aware of the facts of CertainTeed's claims against Ravago, which facts implicated AGLIC's and ZAIC's duty to defend Ravago once the second amended complaint against Ravago was filed.

57. AGLIC and ZAIC's insistence on paying only a limited share of the partial defense costs which AIG had already agreed to pay toward the defense of Ravago Americas in the underlying case, thereby leaving Ravago Americas to fund a substantial portion of its defense costs despite three separate insurers having a duty to defend Ravago in that case, was a breach by AGLIC and Zurich of their respective duties to defend Ravago Americas in the underlying case.

58. As a result of AGLIC's and ZAIC's breach of their respective duties to defend Ravago Americas in the underlying case in response to the second amended complaint, Ravago Americas was damaged.

Wherefore, Ravago Americas demands judgment against AGLIC and ZAIC for compensatory damages, interest, costs, and such other and further relief as the Court deems appropriate.

### Count IV – Breach of Contract by AIG:
### Breach of Agreement to Fund Defense Costs At Agreed Rates

59. Plaintiff adopts paragraphs 17-21, 23-34, and 37-40 above.

60. Pursuant to Florida law which governs the policies issued to Ravago by AIG, a liability insurer has a duty to defend its insured if the allegations of the complaint against the insured allege a claim that is potentially within the coverage provided by the insured's policy.

61. The allegations of the second amended complaint by CertainTeed against Ravago Americas in the underlying case alleged a claim for property damage resulting from an occurrence, which claim is potentially within the coverage provided by AIG to Ravago under the

15

AIG policies, thus the second amended complaint triggered AIG's duty to defend Ravago Americas in the underlying case.

62. AIG's contractual obligation under the policies to provide a defense to Ravago Americas in the underlying case was modified by a supplemental agreement between AIG and Ravago Americas, under which the parties expressly agreed that AIG's defense obligation would be satisfied if AIG funded the hourly work performed by the defense law firm at the hourly rates of $370.00 per hour for partners, and $210.00 per hour for associates, even though the firm was charging substantially more to Ravago Americas than those amounts for the work being performed by its partners and associates on the case.

63. AIG then breached its agreement with Ravago Americas by entering into a separate agreement with Zurich, under which AIG – for all defense costs incurred subsequent to June 26, 2019, would only reimburse to Ravago 47.62% of the amounts which AIG had previously agreed to pay to Ravago, rather than the full amount it had agreed to pay to Ravago in reimbursement of the defense law firm's fees and costs incurred in the defense of the underlying case.

64. As a result of AIG's breach of its agreement with Ravago concerning the rate at which AIG would reimburse Ravago for attorney's fees incurred by Ravago's defense counsel in the underlying case, Ravago has been damaged.

Wherefore, Ravago Americas demands judgment against AIG for compensatory damages, interest, costs, attorney's fees pursuant to *Fla. Stat*. § 627.428, and such other and further relief as the Court deems appropriate.

**Action For Declaratory Judgment Against AGLIC, ZAIC and AIG**

65. Plaintiff adopts paragraphs 9-40 above.

66. This is an action for Declaratory Judgment against AGLIC, ZAIC, and AIG pursuant to 28 U.S.C. §§ 2201 and 2202.

67. An actual controversy exists between plaintiff Ravago Americas and defendants AGLIC, ZAIC, and AIG with respect to the extent of the defendants' obligations, under the policies described in paragraphs 9 through 21 above, to provide a defense to Ravago Americas in regard to the underlying case.

68. In response to the filing of the initial and amended complaints by CertainTeed against Ravago Americas in the underlying case, AIG agreed to provide a defense to Ravago Americas through independent counsel, but AGLIC and ZAIC (collectively, "Zurich") refused to provide a defense.

69. In connection with its agreement to provide a defense to the initial and amended complaints in the underlying case, AIG agreed to retain independent counsel of Ravago America's choosing to conduct that defense, and the parties agreed on the specific amounts which AIG would contribute toward the hourly rates charged by the defense firm's lawyers and paralegals; specifically, AIG would contribute $370.00 per hour for work done by partners, and $210.00 per hour for work done by associates.

70. Under that agreement, Ravago Americas agreed to pay the difference between the amount the defense firm billed to Ravago Americas for the defense it provided, and the amount AIG agreed to pay to Ravago Americas toward that firm's legal bills. This agreement left a substantial amount of the defense costs to be paid by Ravago Americas, in view of Zurich's

17

denial of coverage for, and refusal to defend Ravago Americas against, CertainTeed's original and amended complaints in the underlying case.

71. In response to the filing by Certainteed of its second amended complaint in the underlying case, however, Zurich – on behalf of AGLIC and ZAIC – reversed its prior refusal to defend, and stated that it would "participate" in the defense of Ravago Americas.

72. In response to Ravago Americas' request that Zurich pay the difference between the amount AIG had already agreed to pay toward the defense law firm's bills and the total amount of those bills, Zurich refused to do so. Instead, Zurich merely agreed to pay a portion of the limited amount which AIG had previously undertaken to pay, thereby reducing AIG's contribution to the extent of Zurich's "participation," leaving Ravago to continue to pay the remainder.

73. The net effect of Zurich's "participation" in the defense costs being incurred by Ravago's defense counsel in the underlying case is that AGLIC, ZAIC, and AIG, acting together, have undertaken to pay no more than AIG had originally agreed to pay toward Ravago's defense, thus continuing to leave Ravago Americas to pay those portions of the defense firm's legal fees which the insurers are not paying, despite AGLIC, ZAIC, and AIG each having a duty to defend Ravago in the underlying case.

74. Ravago Americas believes that, because AGLIC, ZAIC, and AIG each have separate, equivalent duties under their respective policies to provide a defense to Ravago Americas in the underlying case, and in light of the fact that the insurers are defending Ravago Americas under a reservation of rights through mutually agreeable counsel, the insurers should each be required to contribute a sufficient amount toward the cost of Ravago's legal defense to fully defray the cost of Ravago's defense.

75. The insurers, on the other hand, have taken the position that it is appropriate and commensurate with their contractual defense obligations for their combined contributions toward the defense of Ravago Americas in the underlying case to be significantly less than the actual legal fees incurred by the law firm providing Ravago's defense, leaving Ravago Americas to pay the difference.

77. A bona fide, actual, practical need for a declaration of the rights and obligations of the parties presently exists on the issue of whether the defendant insurers are obligated to contribute sufficient amounts toward the cost of the defense of Ravago Americas in the underlying case to relieve Ravago Americas from having to pay a significant portion of its own defense costs, as it has been doing.

78. Plaintiff and defendant insurers have an actual, present, adverse, and antagonistic dispute in the subject matter described herein, and are in doubt as to their rights and obligations under the terms of the policies, the facts, and the applicable law.

79. The antagonistic and adverse interests relating to this count are all before the Court by proper process, and the relief sought is not merely the giving of legal advice by the Court, or the answer to legal questions propounded from mere curiosity.

80. Accordingly, Ravago Americas seeks a declaration of its rights under the policies issued by AGLIC, ZAIC, and AIG in regard to the extent of the insurers' financial obligation to fund Ravago America's defense through mutually agreeable counsel in the underlying case.

81. Specifically, Ravago Americas requests a declaration from the Court as follows:

(1) AGLIC and ZAIC each had a duty to defend Ravago Americas against the original and amended complaints filed by Certainteed against Ravago Americas in the underlying case.

(2)   AGLIC, ZAIC, and AIG each have a duty to defend Ravago Americas against the second amended complaint filed by Certainteed against Ravago Americas in the underlying case.

(3)   Because AGLIC, ZAIC and AIG have now undertaken to defend Ravago Americas in the underlying case under a reservation of rights, it is appropriate for that defense to be conducted through mutually agreeable counsel selected by Ravago Americas, rather than through panel counsel selected solely by the insurers.

(4)   Because AGLIC, ZAIC, and AIG each has a separate duty to defend Ravago Americas in the underlying case, the total amount of the defense costs incurred by the defense firm retained to defend Ravago Americas in the underlying case must be fully borne by the insurers, with each insurer's percentage share of the total defense costs to be determined in accordance with each insurer's respective time on the risk.

Wherefore, plaintiff Ravago Americas seeks the Court's declaratory judgment in regard to the foregoing issues, as well as court costs and such other and further relief as this Court deems appropriate.

Date: <u>February 4, 2020</u>

Respectfully submitted,

*s/Robert P. Major*                                    .
Robert P. Major, Esq. (FB#0501115)
Christine A. Gudaitis (FB# 502693)
Benjamin C. Hassebrock (FB# 76504)
**VER PLOEG & MARINO, P.A.**
301 E. Pine Street, Suite 790
Orlando, FL 32801
407-380-9312
407-601-7905, *facsimile*
rmajor@vpm-legal.com
cgudaitis@vpm-legal.com
bhassebrock@vpm-legal.com
*Counsel for Plaintiff*